FEDERAL ELECTRIC
CORPORATION, Plaintiff,

v.

Honorable Frank CARLUCCI, et
al., Defendants.

Civ. A. No. 87–1747.

United States District Court,
District of Columbia.

April 28, 1988.

James McHale, Mary Coster Williams, Seyfarth, Shaw, Fairweather & Geraldson, Washington, D.C., for plaintiff.

Robert C. Seldon, Asst. U.S. Atty., Washington, D.C., for defendants.

## MEMORANDUM

JOHN GARRETT PENN, District Judge.

The plaintiff filed this action pursuant to the Administrative Procedure Act, 5 U.S.C. § 702, *et seq.*; the Armed Services Procurement Act, 10 U.S.C. § 2301, *et seq.;* the Trade Secrets Act, 18 U.S.C. § 1905; the Freedom of Information Act (FOIA), 5 U.S.C. § 552; and the Federal Acquisition Regulation (FAR), 48 C.F.R. Chapter 1 and the Department of Defense FAR Supplement (DFARS), 48 C.F.R. Chapter 2. In its complaint, the plaintiff seeks a judgment declaring that the Navy's disclosure of the plaintiff's cost data violated the law and declaring Solicitation –0695 (hereinafter sometimes referred to as the "Solicitation"), void and for injunctive relief restraining the Navy from taking further action under the Solicitation.

The case is now before the Court on the plaintiff's motion for summary judgment and the defendants' motion to dismiss or, in the alternative, for summary judgment. The motions were argued on April 18, 1988. Since the date of the argument, the parties have filed additional motions which need not be addressed in view of the ultimate disposition of this case.

### I

Briefly, the underlying facts are as follows: The Navy awarded Contract No. 62467–84–R–C–0001 (Contract –0001) to the plaintiff on or about April 30, 1984. The contract was scheduled to expire in accordance with its terms on September 30, 1987.

The contract provided that the plaintiff will operate and maintain the Trident Submarine Base located in Kings Bay, Georgia, and it required the plaintiff to provide base operating services which encompass labor, supervision, management, materials, supplies, equipment and transportation for a variety of functions to support the base. Pursuant to the contract, plaintiff submitted detailed monthly statements of all costs incurred for the performance of the contract. The contract required the plaintiff to furnish actual in-target costs as well as general and administrative expenses based on its audited rate. The contract required further that the plaintiff "submit sufficient documentation with the invoice to substantiate the actual cost disbursements made during the period for which the invoice is made." The reports, which the plaintiff furnished monthly, are commonly called "Job Order Number" Reports or "JON Reports."

The plaintiff contends that such cost data is proprietary information. Plaintiff contends that it disclosed the information to the Navy for the "limited and exclusive purpose" of allowing the parties to effectuate the contract's "Incentive Price Revision Clause."

On or about January 28, 1987, before the Navy issued the Solicitation, Schneider Services International (SSI), pursuant to the Freedom of Information Act (FOIA), 5 U.S.C. § 552, submitted a request seeking disclosure of the plaintiff's JON Reports. SSI requested the last page for each annex containing the monthly total for that annex of the plaintiff's 1986 and 1987 JON Reports. At all relevant times (January 28, 1987 to April 16, 1987), defendants were operating under the provisions of NAVFAC Instruction 5720.14A which was issued August 31, 1984 and is entitled "Availability To The Public Of Naval Facilities Engineering Command Records Under the Freedom of Information Act."

On or about February 10, 1987, the Navy issued the Solicitation for the follow-on contract to Contract –0001 for the Base Operating Services. In mid-February 1987, a representative of the plaintiff was advised that an FOIA request had been made for information relating to plaintiff's JON Reports. On or about February 20, 1987, the Release Authority at Kings Bay advised the Commanding Officer and the Initial Denial Authority, Naval Facilities Engineering Command, Charleston, South Carolina, that the JON Reports were non-releasable to competing contractors because (1) plaintiff prepared the JON Reports, (2) Contract 0001 required the plaintiff to submit the reports to the Navy and, (3) release of the reports would divulge privileged information.

By letter dated February 25, 1987, the plaintiff advised the Resident Officer in charge, that it considered the cost information in the JON Reports highly confidential and that the release of the reports would cause the plaintiff harm. Based upon all of the above information, the Navy denied SSI's FOIA request as confidential pursuant to the Exemption 4 of the FOIA. 5 U.S.C. § 552(b)(4) ("trade secrets and commercial or financial information obtained from a person and privileged or confidential"). A representative of the plaintiff was advised that the FOIA request had been denied.

SSI's Project Development Manager called a representative of the Navy on March 12, 1987 to check the status of the FOIA request. When the SSI representative was advised that the request had been denied, he stated that SSI was only interested in *direct* costs, and he asked the Navy to delete proprietary data and release only direct labor and material costs. Dennis Affidavit. par. 7.

After further conversations with other representatives of the Navy who were familiar with the contract and procurement procedures, the Navy representative determined that direct labor and material costs included in the JON Reports could be released without jeopardizing plaintiff's competitive position and that all bidders should be given the same information.

The Navy created a new document identifying the direct labor and material costs incurred by the plaintiff between October 1986 and March 1987 for each of the 22

annexes and decided to release it, not only to SSI, but to all offerors on the Solicitation. The Navy placed notes at the bottom of the cost summary document to aid in clarifying differences between the existing contract and RFP –0695. On or about April 9, 1987, a representative of the Navy spoke with the plaintiff's Project Manager and told him that the Navy was leaning toward releasing the bottom line from plaintiff's JON Report data.[1] On or about April 16, 1987, without prior written notice to the plaintiff, the Navy released the information to all offerors.

By letter dated May 5, 1987, the plaintiff advised the Navy that it regarded the release of the information relating to its cost data to be improper and a violation of its proprietary rights. Plaintiff filed a formal written protest on May 18, 1987. The Navy denied the request on June 16, 1987 stating that (1) the two contracts were substantially different, (2) there was no basis to withhold the release of the summary information, (3) there was no potential for competitive harm and, (4) the furnishing of the data to bidders was proper under applicable procurement regulations. Plaintiff filed this action on June 26, 1987.

On February 2, 1988, the Court heard the plaintiff's motion for summary judgment and the defendants' motion to dismiss or in the alternative, for summary judgment. On February 29, 1988, the Court denied the plaintiff's motion and granted the defendants' motion to dismiss on the grounds on lack of ripeness. On March 17, 1988, the Navy awarded the contract which is the subject of this action to United Airlines Services. The plaintiff then moved to reopen the case and for a temporary restraining order. The Court granted the motion to reopen but denied the motion for a tem-

porary restraining order. *See* Order filed March 31, 1988. In denying the motion for a temporary restraining order, the Court noted that the plaintiff's contract with the Navy would remain to May 1, 1988. The Court scheduled arguments on the dispositive motions for April 18, 1988.

In its motion for summary judgment, the plaintiff seeks to have the Court issue a declaratory judgment declaring that the release of the plaintiff's cost data was unlawful and enjoining the defendants from expending public funds or otherwise implementing performance of the contract awarded March 17, 1988 pursuant to the Solicitation. As an alternative to the second request, the plaintiff seeks to have the Court issue a preliminary injunction and "during its pendency require that the final cost proposals for each offeror, whose offers were previously found to be within the competitive range under RFP–0695 be made available to each other, and a new 'best and final' round be conducted to determine the awardee"; or in the alternative, "to issue a preliminary injunction and require the parties to seek a negotiated disposition by April 25 under the supervision of a magistrate."

The defendants seek to have the Court grant their motion to dismiss or, in the alternative, for summary judgment, and dismiss the case with prejudice.

## II

The first issue which must be addressed relates to the release of the information taken from the JON Reports prepared and submitted to the Navy by the plaintiff.

Plaintiff contends that the Navy improperly released the information over its objection. The record reflects that initially the Navy refused to release information re-

---

1. The contents of the conversation between the plaintiff's representative, Mr. Sartain, and the Navy's representative, Mr. Garvin are disputed. The dispute arises over what was meant by "bottom line." Sartain contends that when Garvin advised him that he intended to release the "bottom line" figure, he thought that Garvin was referring to the total costs for labor and materials as a "single lump sum number" and not an annex-by-annex breakdown of labor and material costs covering six months of actual cost expe-

rience in 264 cost categories. Sartain Affidavit dated October 12, 1987, par. 27. Garvin contends, on the other hand, that, while he and Sartain discussed "bottom line" costs, that the discussion were in adequate detail so that they were discussing total labor and material costs by annex, and Garvin felt that it was clear that Garvin was referring to the release of the JON Report data exclusive of overhead, G & A and earned profit. Garvin Affidavit dated November 3, 1987.

quested by SSI pursuant to Exemption 4 of the FOIA. Thereafter, SSI advised that it was only interested in the release of *direct* costs and not *proprietary* information. The costs SSI sought were direct labor and material costs. After considering this request the Navy concluded that the information requested was not proprietary information. The Navy created a new document containing the direct labor and material costs only. Thereafter, a representative of the Navy discussed the matter with the Project Manager of the plaintiff, and the record reflects that the Project Manager did not object to the release. The Navy released the information approximately seven days later without giving the plaintiff *written* notice.

Plaintiff contends that the release of the information was "unlawful" and that the Navy was required to give written notice to the plaintiff before releasing the information. The plaintiff argues that written notice is required by NAVFAC Instruction 5720.14A (NAVFAC). That document provides, in part, as follows:

> a. Upon receipt of a request for records provided by contractor, corporation or other non-U.S. Government source, immediately notify the source of the record that a request has been received. That notification *should* be followed by a certified letter to the same affect. A sample letter is contained at enclosure (4). The source of the record should be given five working days to comment on the release of the record. Additional time may be granted if the requester agrees to an extension of the original time limit.

NAVFAC at par. 7(a) (emphasis the Court's). The defendants contend that the document does not *require* written notification, it only suggest that written notice be given. In this connection, the defendants cite to the fact that the document contains the language "should" rather than "shall". Thus, they argue, written notice is not mandatory.

The Court observes that it would be far better to require a written notice for two reasons. First, the actual fact of the notice is easily provable by producing a copy of the notice. Second, a written notice would eliminate any question as to the information furnished to the contractor concerning the request. Here, Mr. Sartain for the plaintiff and Mr. Garvin for the Navy do not agree as to what was meant by the "bottom line." [2] A letter from the Navy to the plaintiff outlining what the Navy proposed to release may have avoided that part of the controversy. It would also seem that the Navy should have made every attempt to have the contractor respond in writing as well. But, there is an important constraint against giving written notice by certified mail. The constraint is time. When a request is made pursuant to the FOIA the agency is placed under time constraints and must respond to the requester within a given time.

■ A reading of NAVFAC reveals that it permits oral notice, no doubt because of the time constraints. It provides that: "Upon receipt of a request for records ... immediately notify the source of the record that a request has been received." That language permits oral notice to the source of the record. This much is made clear by the sentence that follows: "That notification *should* be followed by a certified letter to the *same* effect." The use of the word "should" suggest that written notice is not required but should be given in the appropriate case. For example, once the contractor is given oral notice, it may determine that it has an objection and so inform the Navy. If this is the case, then the purpose of the notice has been satisfied. This is apparently what occurred when the plaintiff objected to the initial FOIA request submitted by SSI. Of course, the contractor may require additional time within which to submit a formal detailed objection, but at least the Navy is on notice that a formal objection will be filed, if indeed, such objection or further comment is required.

It is also significant that NAVFAC does not contemplate a detailed written notice;

---

**2.** See Footnote 1.

in fact, the written notice would normally be identical to the oral notice. This is made clear because NAVFAC provides that the written notice will be to the "same effect" as the oral notice.

Thus, the Court concludes that the Navy was not required to give written notice and that oral notification would suffice.

Unfortunately, the inquiry cannot stop at that point. The next issue raised is whether the Navy gave a proper oral notice. Again, such notice should include advice to the contractor that a request has been made and the nature of the request. The problem presented here is that the parties apparently agree that there was a conversation on April 9, 1987 between Mr. Garvin, on behalf of the Navy, and Mr. Sartain, plaintiff's Project Manager. As stated by the plaintiff, Garvin "mentioned" to Sartain that the Navy was "leaning toward releasing the bottom line." Plaintiff's Amended Findings of Fact and Conclusions of Law, par. 23. The defendants' version differs slightly in that they contend that Garvin "told" Sartain that the Navy was "leaning toward releasing the bottom line." *Id.*, Garvin I Affidavit at 14. And, as noted, a further dispute relates as to what was meant by "bottom line."

The Court concludes that whether the request was "mentioned" to the plaintiff or whether Sartain was "told" makes no difference in the outcome of this case. Sartain and the plaintiff understood what was being said by the Navy because the plaintiff had also been advised of the previous request. A FOIA request had been made and the Navy was required to make a response, and make that response within a given time frame. Moreover, both sides agree that the plaintiff was on notice as of April 9, 1987. Under these circumstances, the plaintiff was on notice that an immediate response was required. When the plaintiff did not protest or object or even comment on the release of the information the Navy could assume that there was no objection to the release. It must be noted that the Navy had refused an earlier request for release of information, but that the Navy had determined that the pending request was not for proprietary information. Indeed, the requester had made it clear that it was not requesting proprietary information. Finally, the information was not released for seven days.

■ The plaintiff did not object to release until almost one month later, after the information had been released, apparently because it then realized that the information to be released was more extensive than the plaintiff originally believed. Under these circumstances the Court cannot conclude that the Navy violated NAVFAC notwithstanding the apparent misunderstanding as to what was actually going to be released. Nothing in the record suggest that the Navy acted in bad faith. Moreover, the plaintiff being interested in what was going to be released could have asked for more details before deciding whether or not to object. It seem clear that the plaintiff did not object to the release of the information, but now objects to the form in which the information was released.

■ The plaintiff contends that the information should not have been released in any event because it was proprietary. As noted above, the plaintiff did not object to the release of the information in a timely fashion, therefore, it cannot now complain that the information should not have been released. Moreover, assuming that the plaintiff had made a timely objection to release, and the information was released notwithstanding the objection, the plaintiff has not established that the information should not have been released.

While the Court does not find that the Navy violated any applicable statute, there were certain problems in the manner in which they handled the FOIA request for information. Obviously, it is far better to inform a contractor in writing when a request for information is received. The written submission could have been made in almost the same time frame as the oral communication. Additionally, while the Navy was operating under time limitations in notifying the plaintiff and responding to SSI, it is noted that SSI's second request was made on or about March 12, 1987, but

the Navy did not notify the plaintiff until April 9, 1988. Moreover, it seems that it would have been preferable for the Navy to require SSI to submit its second request in writing rather than to process it based upon the informal conversation between SSI's Project Development Manager and the Navy's FOIA Coordinator.

In sum, under the undisputed facts in this case, the Court concludes that the release of the information was not unlawful and that plaintiff is not entitled to a declaratory judgment that defendants violated the law.

### III

■ While the manner in which the information was released raises some questions, the primary question is whether the plaintiff has established that it was prejudiced by the release of the information. After giving careful consideration to the facts in this case, the Court concludes that the plaintiff has not done so.

When the Navy determined that the subject portions of the JON Reports should be released, they also determined that the information should be released to all offerors. Thus, each of the offerors, including the plaintiff, had access to the information. In that sense, all were on equal footing, except perhaps the plaintiff since it had performed under the earlier contract and to that extent had, at least, a slight advantage. But, the record reflects that the plaintiff submitted the highest bid of the four finalists.[3] Moreover, insofar as the plaintiff is concerned, its bid was not even close. In a contract where the highest bid did not exceed $84,000,000, the plaintiff's bid exceeded the bid of the successful bidder by over $11,000,000. Its initial bid was also higher than the bids submitted by the other contractors. Under these circumstances it is impossible to conclude that the release of the subject information had any affect on the unsuccessful bid submitted by the plaintiff. The record demonstrates that the plaintiff would have lost in any event. And this is true notwithstanding the affidavit of Roy V. Woodle, Vice President, Program Development, Vinnell Corporation.[4]

Moreover, of all of the finalists, the plaintiff had the lowest technical score. Technical Excellence is separate from costs and the technical evaluators were not given access to the pricing data.

Plaintiff, as a disappointed bidder, "bear[s] *heavy burden* of showing either that (1) the procurement official's decision on matters committed primarily to his own discretion had not rational basis, or (2) the procurement procedure involved a clear and prejudicial violation of applicable statutes or regulations." *Kentron Hawaii, Limited v. Warner,* 156 U.S.App.D.C. 274, 277, 480 F.2d 1166, 1169 (1973) (emphasis this Court's, footnotes omitted).

The record here demonstrates that the plaintiff lost on two counts, it submitted the highest bid, and it had the lowest score on technical excellence. Plaintiff has failed to establish that it suffered any lost due to the release of the information.

After careful consideration of the record in this case, the Court concludes that the plaintiff's motion for summary judgment should be denied and that the defendants' motion for summary judgment should be granted.[5] The case will be dismissed with prejudice. With respect to the other mo-

---

**3.** The information concerning the actual bids has been filed under seal. *See* Affidavit of Mary P. Mimms.

**4.** The plaintiff submitted the affidavit of Woodle in an effort to demonstrate that such information is normally not released and the information furnished to the other offerors must have assisted them in the bidding process. While it may have helped the others, the same information was also available to the plaintiff. The affidavit cannot overcome the fact of the great discrepancy between the plaintiff's bid and that of the successful bidder and even the other two finalists.

**5.** The plaintiff has cited two cases to the Court which it contends would support plaintiff's argument; *Payne Enterprises, Inc. v. United States,* 837 F.2d 486 (D.C.Cir.1988) and *AT & T Information Systems, Inc. v. General Services Administration,* 258 U.S.App.D.C. 254, 810 F.2d 1233 (1987). The Court has reviewed each case and does not find them controlling.

tions submitted by the parties, they are denied.