**FEDERAL ELECTRIC CORPORATION, Appellant,**

v.

**Frank CARLUCCI, Secretary of Defense, et al.**

No. 88–5148.

United States Court of Appeals, District of Columbia Circuit.

Argued Nov. 17, 1988.

Decided Feb. 7, 1989.

James M. McHale, with whom Mary Coster Williams, Washington, D.C., was on the brief, for appellant.

Edith S. Marshall, Asst. U.S. Atty., with whom Jay B. Stephens, U.S. Atty., John D. Bates, and R. Craig Lawrence, Asst. U.S. Attys., Washington, D.C., were on the brief, for appellees. Robert C. Seldon, Asst. U.S. Atty., Washington, D.C., also entered an appearance for appellees.

Before MIKVA, BUCKLEY and D.H. GINSBURG, Circuit Judges.

Opinion for the Court filed by Circuit Judge BUCKLEY.

BUCKLEY, Circuit Judge:

Federal Electric Corporation appeals from a summary judgment entered for the United States Navy and other appellees by the U.S. District Court for the District of Columbia. The court concluded that the Navy's release of Federal Electric's allegedly proprietary and confidential cost data was lawful and did not harm Federal Electric in competing for a new government contract. Federal Electric claims, *inter alia*, that it has established the requisite harm to succeed on the merits, that the record evidence was insufficient to support appellees' decision to release the data, and that the Navy's release of the information violated applicable statutes, regulations and due process standards. Because Federal Electric did not allege any injury in its complaint beyond that satisfactorily rebutted by appellees, we affirm and do not reach Federal Electric's other claims.

## I. BACKGROUND

Appellees (collectively, the "Navy") awarded Contract No. N62467–84–C–0001 ("Contract No. –0001") to appellant Federal Electric Corporation ("FEC") in 1984 to operate and maintain the Navy's King's Bay, Georgia, submarine base. Under the contract, FEC was required to submit monthly "Job Order Number" ("JON") Reports stating its incurred "in-target" costs as well as its general and administrative ("G & A") expenses.

In early 1987, the Navy issued Solicitation No. N62467–86–R–0695 ("Solicitation No. –0695") seeking bids for the contract to follow on the September 1987 expiration of Contract No. –0001 ("follow-on contract"). A potential bidder for the contract, Schneider Services International ("SSI"), filed a Freedom of Information Act ("FOIA") request seeking the information contained in FEC's JON Reports for 1986 and 1987. The Navy's Base Director of Contracts, Minter Garvin, advised FEC's Project Manager, Wyvil Sartain, of the FOIA request.

On February 25, 1987, FEC wrote the Navy that FEC considered the reports confidential and asserted their immunity from disclosure under FOIA Exemption 4, 5 U.S. C. § 552(b)(4) (government not required to disclose "trade secrets and commercial or financial information obtained from a person and privileged or confidential"). The Navy determined that the information contained in the JON Reports was privileged because it included FEC's G & A costs, profit figures, and indirect costs, and denied the request on the basis of Exemption 4.

On March 12, 1987, the Navy's FOIA Coordinator of the Southern Division, Cheryl Dennis, advised SSI that its FOIA request had been denied. The SSI representative stated that SSI was only interested in direct labor and material costs and asked whether the privileged information could be deleted. Dennis subsequently asked Garvin to send her the information sought by SSI so that she could seek a legal opinion on whether it could be released. Garvin told Dennis that if the G & A and profit information were excluded, FEC would suffer no competitive harm. Subsequently, on April 9, 1987, Garvin told Sartain that the Navy was "leaning toward" releasing "bot-

tom line" cost data in response to SSI's second request. FEC reiterated its position as stated in its February 25 letter, but did not object to the release of the "bottom line" data or make inquiries to determine what was meant by "bottom line" data, although the parties now dispute that term's meaning. *See Federal Electric Corp. v. Carlucci*, 687 F.Supp. 1, 3 n. 1 (D.D.C.1988) ("Memorandum Opinion").

One week later, the Navy released a specially created document, JON Cost FY 87, containing the labor and material costs listed in FEC's JON Reports for October 1986 through March 1987. The document included 264 separate items of costs, with explanatory notes, and was provided to all offerors in the solicitation. FEC filed a formal protest in which it contended that the Navy's disclosure had caused it competitive harm and had violated the Navy's Federal Acquisition Regulation as well as the Trade Secrets Act, 18 U.S.C. § 1905. FEC requested that the Navy either cancel the solicitation, which was scheduled to be completed by September 1987, or suspend it for several months to allow FEC's cost data to become obsolete. FEC stated that "a sufficient contract extension would mitigate the competitive harm caused to FEC." As it happened, the new contract was not awarded until March 15, 1988, because of complications encountered in the procurement process.

On June 16, 1987, the Navy denied FEC's protest. The Navy stated that because the solicitation for the follow-on contract was "substantially different" from the contract under which FEC was currently working, the released data would not enable competitors to anticipate FEC's bid. Thus, FEC would not suffer competitive harm. Ten days later, FEC filed a complaint seeking declaratory and injunctive relief in which it alleged that the Navy's release of direct material and labor costs was unlawful and prejudicial to FEC in competing for the follow-on contract. On July 31, 1987, FEC moved for partial summary judgment. The Navy opposed and cross-moved for summary judgment on the ground that FEC's claim of prejudice in the solicitation process was not ripe: as the new contract had not

yet been awarded, FEC was unable to establish injury. The district court dismissed the action without prejudice. *FEC v. Weinberger*, Civ. Action No. 87–1747 (D.D.C. Feb. 29, 1988) [1988 WL21704].

On or about March 17, 1988, the Navy awarded the contract to United Airline Services Corp. ("United"). FEC moved immediately to reopen the case, which the district court granted, and for a temporary restraining order and discovery, which the court denied. In its Memorandum Opinion, the district court ruled that FEC had not established that the Navy's release of the information was unlawful or that FEC had been prejudiced thereby, and granted the Navy's motion for summary judgment. 687 F.Supp. at 6. This appeal followed.

## II. Discussion

Paragraph 1 of FEC's complaint states that FEC "seeks the Court to declare [Solicitation No. –0695] void as a result of [the Navy's] violations of plaintiff's rights and federal procurement law...." In paragraph 29, FEC asserts that as a result of these violations, it had been "seriously injured and wrongfully placed at a competitive disadvantage with respect to submitting an offer in response to Solicitation –0695." FEC sought, in its Prayer for Relief, "a judgment declaring that the Navy's disclosure of [FEC's] cost data violated law and further declaring Solicitation –0695 void," an injunction preventing the Navy from proceeding with the solicitation, and "[c]osts, attorneys fees and such other relief as the Court deems just and proper." As the only injury alleged by FEC related to the contract solicitation, both the parties and the district court have properly treated this as a procurement dispute.

Given this posture, once the contract was awarded, FEC could only proceed as a "disappointed bidder" on a government contract. To succeed on the merits, FEC was required to show that the procurement process involved both a clear *and* a prejudicial violation of applicable statutes and regulations. *See Kentron Hawaii, Ltd. v. Warner*, 480 F.2d 1166, 1169 (D.C.Cir.1973).

There were thus two issues before the district court: first, whether the Navy's release of FEC's data violated applicable law; and second, whether the release prejudiced FEC in the solicitation. The district court held that the Navy's action was lawful and that the Navy had successfully rebutted the claim of injury set forth in FEC's complaint. Because we agree with the latter holding, we need not decide whether the Navy complied with applicable statutes and regulations.

■ The Navy submitted affidavits under seal that detailed all the final bids and demonstrated the differences between FEC's proposal and that of United, the winning bidder. FEC's bid of approximately $83 million was the highest of those submitted by the four finalists and exceeded United's by over $11 million. As the district court found, FEC's bid was "not even close" to the winning proposal. Memorandum Opinion, 687 F.Supp. at 6. In addition, the Navy's "Technical Evaluation" of the bidders, which involved an examination wholly independent of the economics of the bids and upon which the Navy's release of FEC's cost data could have no effect, found FEC to be the least qualified of the four finalists. *Id.*

On a more detailed level, an annex-by-annex "individual task" analysis filed by the Navy under seal, which compared the direct material and labor costs components of the proposals submitted by FEC and United, revealed no pattern of marginal underbidding that would indicate that United used the released data to FEC's detriment. This evidence, about which there was no genuine dispute of material fact, clearly supports the district court's finding that FEC was not prejudiced in the solicitation by the Navy's release of FEC's cost data.

■ On appeal, FEC suggested an additional claim of injury for the first time. Specifically, it asserted that it sought a declaratory judgment so that it could present a claim for recovery of its bid and proposal costs under the Tucker Act, 28 U.S.C. § 1491 (1982). As FEC failed to assert this claim of injury in the proceedings before the district court, it is inappropriate for us to consider it. *See Stewart v. National Shopmen Pension Fund,* 795 F.2d 1079, 1084 n. 3 (D.C.Cir.1986); *District of Columbia v. Air Florida, Inc.,* 750 F.2d 1077, 1084–85 (D.C.Cir.1984).

■ Moreover, to the extent that FEC seeks a declaratory judgment independent of its Tucker Act claim, that request has been mooted by the release of the information and by the lack of evidence of a Navy policy and practice to release such information. *See Conyers v. Reagan,* 765 F.2d 1124, 1128 (D.C.Cir.1985); *cf. Payne Enterprises, Inc. v. United States,* 837 F.2d 486, 491 (D.C.Cir.1988) (case not moot where evidence revealed a continuing practice of challenged conduct).

### III. CONCLUSION

The district court correctly found, on the basis of substantial evidence, that the Navy had successfully rebutted the only claim of injury advanced in FEC's complaint. Accordingly, the judgment of the district court is

AFFIRMED.