**William RICHMOND, Plaintiff,**

v.

**James DUKE, Disciplinary Hearing Officer; Warden Reed; Assistant Warden Lay; Robert Clark, hearing (Disciplinary) Administrator; and Larry Norris, Director, Arkansas Department of Correction, Defendants.**

Civ. No. PB–C–95–473.

United States District Court,
E.D. Arkansas,
Pine Bluff Division.

Dec. 19, 1995.

---

37. Docket No. 25.

William Richmond, Grady, AR, pro se.

## MEMORANDUM OPINION AND ORDER

EISELE, District Judge.

Before the Court is plaintiff William Richmond's *pro se* complaint (Docket No. 3), which seeks relief under 42 U.S.C. § 1983. Plaintiff's complaint has been referred to a United States Magistrate,[1] see 28 U.S.C. § 636(b)(1)(B); E.D.Ark. Rule F–1(VIII)(A)(8), who has since presented the Court with his proposed Findings and Recommendation (Docket No. 4), recommending that plaintiff's complaint be dismissed without prejudice under the authority of *Heck v. Humphrey,* —— U.S. ——, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994). Defendants have filed no objections to the Magistrate's recommended disposition, and the time for them to do so has passed. See 28 U.S.C. § 636(b)(1); E.D. Ark. Rule F–1(VIII)(C). However, plaintiff has timely filed a list of objections to the Magistrate's recommended disposition (Docket No. 5), see *ibid.,* and the Court must

therefore undertake "a de novo determination of those portions of the ... proposed findings [and] recommendation[ ] to which objection[s] [have been] made." 28 U.S.C. § 636(b)(1); *see also United States v. Raddatz,* 447 U.S. 667, 673–76, 100 S.Ct. 2406, 2411–12, 65 L.Ed.2d 424 (1980); *Taylor v. Farrier,* 910 F.2d 518, 520 (8th Cir.1990). After conducting this review, the Court concludes that the Magistrate's recommendation should, ultimately, be adopted in its entirety. The Court, however, pauses to explain in detail the reasons for its decision.

## I.

The facts of this case are, according to the allegations of plaintiff's complaint and the documentation attached thereto,[2] relatively straightforward, and for purposes of this opinion the Court will accept plaintiff's factual representations as true.[3] Plaintiff is an inmate in the custody of the Arkansas Department of Correction (the ADC). Complaint ¶ II. It appears, according to the ADC records presently before the Court, that on December 18, 1994, an ADC corrections officer accused plaintiff of a "major disciplinary" violation of the ADC's disciplinary rules. Complaint exh. 1; see also ADC Admin. Reg. § 831, ¶ VI.D.1–2 (May 18, 1990). Following a hearing conducted by an ADC Hearing Officer, defendant James Duke, see ADC Admin. Reg. § 831, ¶¶ III.B, VI.E (May 18, 1990), plaintiff was found guilty of violating the ADC's disciplinary rules, and he was disciplined accordingly (it appears, among other things, that plaintiff was placed in punitive isolation and stripped of some "good-time" credits). Complaint exh. 1; see ADC Admin. Reg. § 831, ¶¶ III.F, VI.F, VI.G.1 (May 18, 1990). However, plaintiff claims (and for purposes of this opinion the Court accepts as true) that his

---

1. The Honorable Jerry W. Cavaneau, United States Magistrate Judge for the Eastern District of Arkansas.

2. Defendants have not answered or otherwise responded to plaintiff's complaint.

3. Since the Court ultimately concludes that the facts alleged by plaintiff are, presently, insufficient to state a claim under § 1983, the Court will apply the standards that are normally appli-

cable when reviewing a complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure. *See generally Albright v. Oliver,* —— U.S. ——, ——, 114 S.Ct. 807, 810, 127 L.Ed.2d 114 (1994); *Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 2232–33, 81 L.Ed.2d 59 (1984); *Frey v. City of Herculaneum,* 44 F.3d 667, 671 (8th Cir.1995); *Coleman v. Watt,* 40 F.3d 255, 258 (8th Cir.1994).

disciplinary hearing was not held until December 27, 1994, Complaint exh. 1 & 2, *i.e.*, nine days following the corrections officer's filing of the disciplinary charges against plaintiff. On December 29, 1994, plaintiff appealed to defendants Warden Reed and Assistant Warden Lay, see ADC Admin. Reg. § 831, ¶¶ III.G, VI.H (May 18, 1990), arguing that the disciplinary charges filed against him had expired, since his disciplinary hearing was not held within five days of the corrections officer's filing of those charges,[4] and that his disciplinary conviction therefore violated his constitutional due process rights. Complaint exh. 3. Plaintiff also argued that he was, in fact, innocent of the charges against him. *Id.* Warden Reed and Assistant Warden Lay affirmed plaintiff's disciplinary conviction that same day. *Id.* Plaintiff then appealed to the ADC's Hearing Administrator, defendant Robert Clark, see ADC Admin. Reg. § 831, ¶¶ III.G, VI.H (May 18, 1990), but that appeal was denied on January 9, 1995. Complaint exh. 4. On January 21, 1995, plaintiff finally appealed to the Director of the ADC, defendant Larry Norris, see ADC Admin. Reg. § 831, ¶¶ III.G, VI.H (May 18, 1990) but it appears that his final appeal was likewise to no avail.[5] Complaint exh. 6.

After exhausting his administrative appeals within the ADC, plaintiff declined to appeal the ADC's final determination to the appropriate Arkansas Circuit Court, as is permitted under Ark.Code Ann. § 25–15–212(a) (Michie 1987). *See Clinton v. Bonds,* 306 Ark. 554, 816 S.W.2d 169 (1991) (holding that, despite its language to the contrary,

§ 25–15–212(a) provides for judicial review of any ADC determination (including one involving an inmate's "good time") that raises a federal or state constitutional question).[6] Instead, plaintiff filed his § 1983 complaint with this Court on September 5, 1995. In his complaint, plaintiff alleges that he "was tried on a disciplinary that was expired," and that he "was innocent" of the disciplinary charges made against him, Complaint ¶ V, and, therefore, plaintiff (presumably) argues that his Fourteenth Amendment due process rights were violated by his disciplinary conviction and consequent punishment. To redress these alleged due process violations, plaintiff asks that this Court vacate his disciplinary conviction and order same to be removed from his institutional record, that he be ordered removed from the ADC's "hoe squad," and that he be awarded $1,500.00 against each defendant.

## II.

The issue that must presently be dealt with is not whether the allegations of plaintiff's complaint have stated a meritorious due process claim,[7] but, rather, whether plaintiff has selected the appropriate vehicle for bringing any such claim before this Court. This question, in turn, boils down to whether plaintiff may now present either of his due process challenges to his disciplinary conviction under § 1983 (as he has attempted to do), or whether, under the current facts, his sole avenue for raising those claims in federal court is provided by the appropriate federal habeas corpus statute, namely 28 U.S.C.

---

4. The ADC's disciplinary regulations provide that "[t]he Major Disciplinary Court is expected to convene for a hearing within three days (excluding weekends and holidays) after the occurrence of a disciplinary episode (o[r] the writing of the disciplinary)," but that "a disciplinary action will not be reversed for procedural error on [the] ground[] of not receiving a timely hearing so long as the hearing is conducted within five days (excluding weekends and holidays) of the disciplinary episode or discovery of episode." ADC Admin. Reg. § 831, ¶ VI.E.3 (May 18, 1990). However, the ADC's regulations further provide that "[n]o disciplinary will be heard after five days (excluding weekends and holidays) from the time of the infraction … except pursuant to a valid extension." *Id.* Given this regulation, it appears that, in the absence of an extension

under ADC Admin. Reg. § 831, ¶ VI.I (May 18, 1990), plaintiff's hearing should have been held no later than December 23, 1994.

5. The record does not indicate the ultimate disposition of plaintiff's final administrative appeal, though plaintiff claims that defendant Norris "failed to answer" his appeal. Complaint ¶ V.

6. The Arkansas legislature has apparently not yet amended § 25–15–212(a) so as to bring that statute's language into harmony with the Arkansas Supreme Court's decision in *Clinton v. Bonds.*

7. Accordingly, the Court expresses no opinion in the merits of plaintiff's various due process claims.

§ 2254. As the Magistrate correctly recognized, the answer to this question must begin with an analysis of the Supreme Court's recent decision in *Heck v. Humphrey, supra.*

█ In *Heck*, the Supreme Court was faced with a question similar (though not identical) to that currently presented—whether a state prisoner could challenge his conviction in federal court, on due process grounds, in a suit for damages (and other unspecified relief) under § 1983. The Supreme Court resolved that question as follows:

[I]n order to recover for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254. A claim for damages bearing that relationship to a conviction or sentence that has *not* been so invalidated is not cognizable under § 1983. Thus, when a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidation of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated. But if the district court determines that the plaintiff's action, even

if successful, will *not* demonstrate the invalidity of any outstanding criminal judgment against the plaintiff, the action should be allowed to proceed, in the absence of some other bar to the suit.

—— U.S. at ——–——, 114 S.Ct. at 2372–73 (footnotes omitted). In other words, if a § 1983 claim is *necessarily dependant* upon proving that the plaintiff's conviction was constitutionally infirm, he may not make that showing for the first time in his § 1983 action. Rather, the plaintiff must first, *as a prerequisite to his § 1983 action,* have successfully attacked his conviction in prior proceeding (*e.g.,* by having secured a writ of habeas corpus under § 2254). *Id.* at ——– —— & n. 6, 114 S.Ct. at 2372–73 & n. 6; *Schafer v. Moore,* 46 F.3d 43, 45 (8th Cir. 1995) (per curiam); *see also Preiser v. Rodriguez,* 411 U.S. 475, 487–88, 93 S.Ct. 1827, 1835, 36 L.Ed.2d 439 (1973). However, if a plaintiff's § 1983 claim challenges only the constitutionality of the procedures employed in securing his conviction (as opposed to the legality of the conviction itself), *and if any such error would not be sufficient to undermine his conviction,* then the plaintiff will be allowed to proceed with his § 1983 claim. *Id.* at ——, ——– —— & n. 7, 114 S.Ct. at 2370, 2372–73 & n. 7; *see also Wolff v. McDonnell,* 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974). This basic dichotomy of *Heck* has been recognized (in principle, at least), by the Court of Appeals for the Eighth Circuit in its recent decisions in *Schafer v. Moore, supra,* and *Armento–Bey v. Harper,* 68 F.3d 215, 216 (8th Cir.1995) (per curiam).[8]

---

8. Factually, however, the Court finds it difficult (though not impossible) to reconcile the decision in *Armento–Bey* with the dichotomy inherent in the *Heck* decision. In *Armento–Bey,* the Court of Appeals reversed (without any substantial discussion) the district court's dismissal of a § 1983 claim that was predicated upon the plaintiff-prisoner's allegation that his institutional disciplinary resulted from the hearing tribunal's refusal to allow him to present certain (presumably exculpatory) evidence in his defense. As Judge Bowman cogently pointed out in his dissent, ordinarily, when a prisoner is "denied procedural due process during his disciplinary hearing, then it necessarily follows that the disciplinary decision ... [is] unconstitutional and cannot stand." 68 F.3d at 216 (Bowman, J., dissenting). Judge Bowman's observations are not without

some force. *Wolff v. McDonnell, supra,* 418 U.S. at 566, 94 S.Ct. at 2979–80 (a prison disciplinary proceeding involving the loss of "good time" should, absent extraordinary circumstances, allow the inmate to present evidence in his defense); *cf. Green v. Georgia,* 442 U.S. 95, 97, 99 S.Ct. 2150, 2151, 60 L.Ed.2d 738 (1979) (per curiam) (exclusion of relevant exculpatory evidence resulted in a constitutionally infirm proceeding); *Chambers v. Mississippi,* 410 U.S. 284, 302, 93 S.Ct. 1038, 1049, 35 L.Ed.2d 297 (1973) (same). However, the Court construes the majority's holding in *Armento–Bey* as an extremely narrow one, one that is based upon the (implied) premise that the exclusion of the disputed evidence from Armento–Bey's disciplinary proceeding could have at most resulted in harmless

What remains to be seen, however, is whether the rationale expressed in *Heck* should be applied to cases in which a prisoner, such as plaintiff, seeks to challenge a forfeiture of "good-time" credits mandated by a penal institution's disciplinary tribunal. It appears that the Eighth Circuit has, in at least two decisions, apparently assumed that *Heck* applies in the context of such prison disciplinary disputes, see *Armento–Bey v. Harper, supra; Schafer v. Moore, supra,* and the Court is aware that at least one court has expressly so held. *Best v. Kelly,* 39 F.3d 328, 330 (D.C.Cir.1994).

■ Were it writing on a clean slate, the Court might be inclined to take a contrary view, at least as to the threshold question whether prison disciplinary proceedings (especially those involving the loss of "good-time" credits) may, under all circumstances, be challenged under § 2254. It must be remembered that in *Heck,* the plaintiff was, in his § 1983 claim, challenging the legality of the criminal conviction for which he was incarcerated (albeit in a roundabout way, as Heck did not seek release from custody, but only money damages). As such, it made perfect sense, from an analytical perspective, for the Supreme Court to have required Heck to raise any federal constitutional challenge to his conviction under § 2254, as that statute is expressly designed to provide relief for persons who contend that they are "in custody pursuant to the judgment of a State court ... on the ground that [they are] in custody in violation of the Constitution ... of the United States." 28 U.S.C. § 2254(a). In fact, this statutory language can, ultimately, be viewed as the guidepost that directed (at least implicitly) the Supreme Court's decision in *Heck. See Heck v. Humphrey, supra,* —— U.S. at ——–—— & n. 4, 114 S.Ct. at 2378–2380 & n. 4 (Souter, J., concurring) (citing *Preiser v. Rodriguez, supra,* 411 U.S. at 489–

90, 93 S.Ct. at 1836). And, of course, when one successfully attacks his conviction under § 2254, the effect upon his continued "custody" is both immediate and readily apparent. The petitioner is thereafter relieved from the conviction that justified his incarceration (or other custodial supervision), and he is thereafter entitled to either immediate release from the State's custody, a speedy re-trial on the vacated conviction, or whatever other relief is necessary to remove the petitioner from any disability associated with his illegal custody. *See generally Peyton v. Rowe,* 391 U.S. 54, 66–67, 88 S.Ct. 1549, 1555–56, 20 L.Ed.2d 426 (1968). However, in this Court's view, it is far from clear that a challenge to a loss of "good-time" credits in a prison disciplinary proceeding should, in every case (and especially in the instant case), be necessarily viewed as an attack that falls within § 2254's requirement that a habeas petitioner be challenging the lawfulness of his continued "custody," [9] *i.e.,* that the petitioner be raising a "challenge[ ] [to] the fact or duration of his [custody] and seek[ing] immediate or speedier release." *Heck v. Humphrey, supra,* —— U.S. at ——, 114 S.Ct. at 2369.

■ By definition, a challenge to lost "good-time" credits does *not* raise the question whether the petitioner's "custody" (as that term is generally understood) is lawful, *i.e.,* whether there is some constitutional infirmity underlying the state court's judgment of conviction. Rather, a habeas petitioner challenging his lost "good time" attempts to fall within § 2254's "custody" requirement by arguing that his lost "good time" has the potential to effect his ultimate period of incarceration by potentially retarding his parole eligibility (or release) date. *See Wilson v. Lockhart,* 949 F.2d 1051 (8th Cir.1991); *cf. Jennings v. Lombardi,* 70 F.3d 994, 995 n. 2 (8th Cir.1995). However, given the realities

---

error, *i.e.,* error of insufficient magnitude to call into question the validity of Armento–Bey's disciplinary conviction. Construed as such, the Court believes that the Eighth Circuit's *Armento–Bey* decision can be reconciled with the Supreme Court's decision in *Heck. See Heck v. Humphrey, supra,* —— U.S. at —— n. 7, 114 S.Ct. at 2373–74 n. 7; see also *id.* at —— n. 4, 114 S.Ct. at 2379 n. 4 (Souter, J., concurring)

**9.** If is, of course, well-settled that, ordinarily, "[t]he writ of habeas corpus is only available to one who is in custody." *Harvey v. South Dakota,* 526 F.2d 840, 841 (8th Cir.) (per curiam), *cert. denied,* 426 U.S. 911, 96 S.Ct. 2236, 48 L.Ed.2d 837 (1976); *see also Jones v. Cunningham,* 371 U.S. 236, 238–43, 83 S.Ct. 373, 374–77, 9 L.Ed.2d 285 (1963).

of prison and parole administration here in Arkansas, any such effect upon a prisoner's term of imprisonment is, in many (if not most) cases, speculative at best. When a prisoner is committed to the custody of a state penal authority (*e.g.,* the ADC), he can be assured of only one thing—that he will be released from the State's custody at the end of the term of years specified by the sentencing court. And although an Arkansas prisoner may have a legitimate statutory entitlement to "good-time" credits, Ark.Code Ann. § 12–29–201(a) (Michie Supp.1993), such a prisoner has no right to expect that his "good-time" will in any way reduce the term his sentence.[10] Ark.Code Ann. § 12–29–201(c) (Michie Supp.1993). At best, an Arkansas prisoner's "good-time" credits will advance either his parole or "transfer eligibility"[11] date. Ark.Code Ann. § 12–29–201(d) (Michie Supp.1993); ADC Admin. Reg. § 826, ¶¶ V.A., VI. (Jan. 1, 1994); *see also* Ark.Code Ann §§ 16–93–601 to –608 (Michie 1987). However, an Arkansas prisoner has no right to expect that he will, as a matter of course, be granted parole under the authority provided by Ark.Code Ann. § 16–93–701(a) (Michie Supp.1993).[12] *See Stuart v. Lockhart,* 587 F.Supp. 1, 2 (E.D.Ark.1983) (opinion of Eisele, J.); *Robinson v. Mabry,* 476 F.Supp. 1022, 1023 (E.D.Ark.1979); *Davis v. Mabry,* 585 S.W.2d 949, 952, 266 Ark. 487, 491 (1979), *overruled on other grounds, Bosnick v. Lockhart,* 283 Ark. 206, 677 S.W.2d 292 (1984). And, in fact, parole may be denied for any number of (largely discretionary) reasons. *See generally Greenholtz v. Inmates of Neb. Penal & Correction-*

*al Complex,* 442 U.S. 1, 13–16, 99 S.Ct. 2100, 2106–08, 60 L.Ed.2d 668 (1979). Further, since an Arkansas prisoner is limited in the amount by which he can use his "good time" to accelerate his parole (or "transfer eligibility") date, Ark.Code. Ann. §§ 12–29–201(d)(1), –201(d)(2) (Michie Supp.1993), but apparently not in the total amount of "good time" he may accumulate, *see* Ark.Code Ann. § 12–29–201(a) (Michie Supp.1993), one can imagine a scenario under which a prisoner could lose "good time," but where that loss could in no way impact upon his parole eligibility date. It would seem therefore to follow that, in Arkansas at least, the effect (if any) the loss of "good-time" credits may have on the length of a prisoner's term of incarceration (due to any retardation of the prisoner's parole eligibility date) is wholly speculative, and it can seriously be argued that such a remote possibility is not sufficient to fall within the ambit of § 2254's "collateral consequences" doctrine.[13] *Cf. Wolff v. McDonnell, supra,* 418 U.S. at 561, 94 S.Ct. at 2977 ("[T]he deprivation of good time . . . cannot be said with certainty [to affect] . . . the actual date of parole . . . ; and if parole occurs, the extension of the maximum term resulting from loss of good time may affect only the termination of parole, and it may not even do that."). And, when one factors in the fact that one who is paroled in Arkansas remains under the State's supervision, *see Roach v. Board of Pardons & Paroles,* 503 F.2d 1367, 1368 (8th Cir.1974), and hence remains "in custody" for purposes of § 2254, *Piercy v. Black,* 801 F.2d 1075, 1077 n. 2 (8th

**10.** This is, apparently, not true in all states outside of Arkansas. See, *e.g.,* Colo.Rev.Stat.Ann. § 17–22.5–301 (West 1990); Mich. Comp. Laws Ann. § 51.282 (West 1991); Neb.Rev.Stat. § 83–1,107(2), (3) (1995 Supp.); N.D. Cent.Code § 12–54.1–01 (Michie Supp.1995); S.D. Codified Laws Ann. § 24–5–1 (Michie 1988).

**11.** Although the Court has found no definition of the term "transfer eligibility" in either the Arkansas statutes or the ADC's regulations, it appears that term encompasses any "transfer[ ] to a less restrictive placement," Ark.Code Ann. § 12–29–201(e)(1) (Michie Supp.1993), *i.e.,* reassignment to a lower security institution, or any "transfer[ ] to a less restrictive . . . supervision level," *id., i.e.,* placement of an inmate on parole.

**12.** While an Arkansas prisoner may have a liberty interest in his parole that is protected under certain circumstances, *compare Pittman v. Gaines,* 905 F.2d 199, 200 (8th Cir.1990) *with Parker v. Corrothers,* 750 F.2d 653, 658–62 (8th Cir.1984), any such liberty interest does not guarantee a prisoner an absolute right to be granted parole. *See Parker v. Corrothers, supra,* 750 F.2d at 662–63.

**13.** Under this doctrine, a person who stands to suffer any adverse legal consequences as a result of his conviction may challenge that conviction under § 2254, irrespective of whether that person is presently "in custody" of the State. *Carafas v. LaVallee,* 391 U.S. 234, 237–38, 88 S.Ct. 1556, 1559–60, 20 L.Ed.2d 554 (1968); *see also Brewer v. Iowa,* 19 F.3d 1248, 1250–51 (8th Cir. 1994).

Cir.1986), it seems somewhat strained to argue that a prisoner's challenge to his loss of "good-time" credits can be viewed, in any meaningful way, to be an attack upon the fact or duration of his "custody" sufficient to sustain a cause of action under § 2254.[14]

The Court is aware, however, that the higher courts have taken a contrary view of this question. For example, in *Preiser v. Rodriguez, supra,* the Supreme Court squarely held (without discussing the issues raised above, notably the uncertainty surrounding the effect (if any) lost "good time" may (or may not) have on a prisoner's "custody") that a prisoner who seeks a federal court order directing the restoration of lost "good-time" credits (as opposed to money damages) must proceed under § 2254. 411 U.S. at 487–88, 93 S.Ct. at 1835. Arguably, *Preiser* could be distinguished on its facts, as the prisoner in that case, if he prevailed in securing the restoration of his lost "good-time" credits, would have been entitled to immediate release, *id.* at 487, 93 S.Ct. at 1835, and hence could be viewed as having raised a claim that truly had the ability to effect the fact or duration of his continued custody.[15] *See also Stuart v. Lockhart, supra,* 587 F.Supp. at 2–3. The Eighth Circuit's decision in *Offet v. Solem,* 823 F.2d 1256, 1257 (8th Cir.1987), also holding that an action seeking the restoration of lost "good-time" credits must be brought under § 2254, likewise appears distinguishable on a similar basis, as it seems that the restoration of Offet's "good-time" credits would, under South Dakota law, have resulted in an immediate reduction in his overall term of incarceration.[16] However, despite the concerns

the Court has outlined above, any argument that a loss of "good time" could ever be viewed as being too speculative to constitute a true attack upon one's "custody" cognizable under § 2254 has been foreclosed by the Eighth Circuit's decision in *Blair–Bey v. Nix,* 919 F.2d 1338, 1339 (8th Cir.1990) (per curiam), *cert. denied,* 502 U.S. 899, 112 S.Ct. 275, 116 L.Ed.2d 227 (1991), which held that a prisoner serving a sentence of life without parole could, nevertheless, challenge a loss of "good time" under § 2254 (under the theory that his lost "good time" might affect the length of his term of incarceration in the (very unlikely) event his sentence was commuted to a term of years by executive clemency). *See also Wilson v. Lockhart, supra,* 949 F.2d at 1051 (holding that the mere possibility that a successful claim might have the effect of advancing the petitioner's parole eligibility date is sufficient to sustain a cause of action under § 2254). And, if that were not enough, the Eighth Circuit has recently stated (in a very cursory and somewhat circular analysis) that, in light of *Heck,* the mere possibility that a prisoner may have a potential § 1983 claim is, standing alone (and irrespective of the potential merit of any such claim), a sufficient "collateral consequence" to support a cause of action under § 2254, regardless of whether the petitioner is, or is not, "in custody." *Leonard v. Nix,* 55 F.3d 370, 373 (8th Cir.1995). In sum, the Court can find no principled basis, given the Eighth Circuit's precedent, for refusing to apply the principles announced in *Heck* to cases brought by prisoners challenging the loss of "good-time" credits in prison disciplinary proceedings.

**14.** Rather, a loss of "good time" which arguably results in a delay in parole eligibility, seems, in reality, to be a challenge to the conditions under which one is being held in custody (parole vs. incarceration), rather than a challenge to legality, *i.e.,* the fact or duration, of the custody itself. And while there is obviously a difference between incarceration and parole (namely the latter's absence of physical confinement), this difference relates only to the degree of custodial supervision imposed by the State. As such, it appears that any challenge to lost "good time" should (in the absence of the contrary precedent to be discussed) be brought under 28 U.S.C. § 2241. *Cf. Jacobson v. United States,* 542 F.2d 725, 727 (8th Cir.1976).

**15.** The *Preiser* Court gave no indication whether the plaintiff in that case would have been entitled to an unconditional release, or rather release on parole. Thus, it is impossible to say whether *Preiser* can be factually reconciled with the all of the concerns discussed above, namely the Court's observation that both parole and incarceration qualify as "custody" under § 2254.

**16.** In fact, it appears, strictly speaking, that these two scenarios are the only ones that fall squarely within *Heck. See Heck v. Humphrey, supra,* — U.S. at ——, 114 S.Ct. at 2369 (A prisoner may not use § 1983 to raise a "challenge[ ] [to] ... the fact or duration of his [custody] ... [that] seeks *immediate or speedier release.*") (emphasis added).

## III.

Thus, the Court now turns to the task of applying *Heck* to the present dispute. Plaintiff, according to his complaint, seeks the restoration of his "good-time" credits (and other relief) under two theories: (1) that he was convicted of a disciplinary violation outside the five-day limitations period established by the ADC's regulations; and (2) that he was, in fact, innocent of the disciplinary charges against him. If plaintiff were to prove that his disciplinary hearing took place outside the applicable limitations period (and that he raised this issue before the disciplinary tribunal), then, arguably, plaintiff's disciplinary conviction could not be allowed to stand.[17] *Cf. Biddinger v. Commissioner of Police,* 245 U.S. 128, 135, 38 S.Ct. 41, 43, 62 L.Ed. 193 (1917) (implying that the expiration of the applicable statute of limitations could support habeas relief from a criminal conviction, provided that the limitations issue was raised at trial). The same would obviously hold true if plaintiff were to prove that he was factually innocent of the disciplinary charges made against him. So, it seems clear that, in so far as plaintiff is seeking relief under § 1983 for these alleged due process violations, he must first succeed in having his disciplinary conviction set aside, either in a § 2254 proceeding, or in some other appropriate forum. *Heck v. Humphrey, supra,* —— U.S. at ——––——, 114 S.Ct. at 2372–73. Accordingly, the Court concludes that the Magistrate was correct in recommending that plaintiff's complaint be dismissed without prejudice. See *Schafer v. Moore, supra,* 46 F.3d at 45.

## IV.

IT IS THEREFORE ORDERED that the Magistrate's Findings and Recommendation be, and they are hereby, APPROVED and ADOPTED. IT IS FURTHER ORDERED that plaintiff's complaint be, and it is hereby, DISMISSED WITHOUT PREJUDICE. An appropriate judgment will be entered.

**17.** A necessary premise underlying this argument is that plaintiff had a right to have any disciplinary complaint filed against him to be heard within the time limit imposed by the ADC's regulations. However, in the wake of the Supreme Court's recent decision in *Sandin v. Conner,* —— U.S. ——––——, 115 S.Ct. 2293, 2300–02, 132 L.Ed.2d 418 (1995), the viability of that premise is questionable at best. The Court expresses no opinion on this legal issue.

## *JUDGMENT*

Pursuant to the Proposed Finding and Recommendation, as well as the Court's supplemental Memorandum Opinion, it is Considered, Ordered and Adjudged that plaintiff's complaint be, and it is hereby, DISMISSED WITHOUT PREJUDICE. The relief sought is denied.